**GENERAL CONSTRUCTION COMPANY, Columbia, South Carolina, a corporation, Plaintiff,**

v.

**HERING REALTY COMPANY, a corporation, as successor to Bennettsville Realty Company, Defendant.**

**No. CA/6748.**

United States District Court
E. D. South Carolina,
Florence Division.

Jan. 18, 1962.

J. Means McFadden, Robinson, McFadden & Moore, Columbia, S. C., for plaintiff.

S. S. Tison, Bennettsville, S. C., P. C. Herr, Philadelphia, Pa., for defendant.

WYCHE, District Judge (sitting by designation).

This is an action brought by the plaintiff to foreclose a mechanic's lien on certain real estate in Marlboro County, South Carolina, and is now before me on seven separate motions, two made by the plaintiff and five made by the defendant.

The action is based upon a contract between plaintiff and Bennettsville Realty Company, defendant's predecessor in ownership of the real estate. The present defendant is a Pennsylvania corporation into which Bennettsville Realty Company was merged and consolidated on March 10, 1958, and which assumed all the liabilities of the latter, as well as taking all of its rights. Plaintiff (the contractor) agreed to construct a building for Bennettsville (the owner) and to complete it within 210 days after receiving notice to proceed from the owner's engineer/architect The McPherson Company. "Owner" refers to both Bennettsville Realty Company and its successor Hering Realty Company, the defendant here.

The contract price to be paid the contractor was $645,620.00, and during the course of construction the engineer/architect issued certain change orders which increased the contract price by $5,-766.67, a total of $651,386.77. Of this amount the owner has paid $582,267.45, leaving a balance of $69,117.32.

The contractor started work on January 2, 1957, and the building was delivered to the owner on February 12, 1958, which is beyond 210 days after the commencement of the work, whether the beginning date be November 29, 1956, as contended by the owner, or January 2, 1957, when the work actually started, and the parties are in complete disagreement as to which of them is responsible for the delay.

Many and almost constant differences existed between these parties from shortly after the commencement of the work until the building was delivered to the owner. During the course of construction the date of completion was extended from time to time, and, on October 23, 1957, a conference between the parties was held, at which time it was agreed that it would take approximately four weeks thereafter to complete the building. It was not completed within that time, but the contractor continued the work until the latter part of January, 1958, when the owner gave notice it was terminating the contract seven days thereafter.

The owner did not terminate the contract at that time, but extended the time for completion from day to day until January 13, 1958, by telegrams from its president. The contractor delivered the building to the owner on January 12, 1958.

At that time the engineer/architect certified the building as being complete, with the exception of certain items needing completion or correction, shown on what the trade calls a "punch list" and at that time issued its certificate for payment that the balance of the contract price $69,117.32 was then due the con-

tractor by the owner, subject to completion of the items on the "punch list".

The contractor contends that the "punch list" items were corrected within thirty days after the certificate for payment, when, under the contract, final payment was due. The owner contends that they had not been completed.

In March, 1958, the contractor filed its claim for extra work and labor beyond the contract requirements, totalling $20,447.-12. In April, 1958, the engineer/architect notified the contractor that it approved $512.28 of these claims and disapproved the remainder.

In March, 1958, Globe Ticket Company filed a number of claims against the contractor, some of which were approved or disapproved by the engineer/architect but others of which were not passed upon by it, although they constituted ninety per cent. or more of the total amount claimed by Globe Ticket Company.

The engineer/architect gave the contractor notice of its rulings on these claims on April 10, 1958. For the remainder of April, and into the early part of May, the parties conferred in an attempt to settle their conflicting claims but without success.

On May 12, 1958, the contractor filed its mechanic's lien upon the owner's property, setting out the indebtedness secured thereby to be $69,117.32 for the balance due under the contract, and $20,447.12 for additional labor and materials, a total of $89,564.44.

On June 2, 1958, the owner mailed to the contractor and the engineer/architect a demand for arbitration of the thirteen items constituting the contractor's claims for extras, and of the forty-four items which constituted the owner's claims, stating in that demand that claims Nos. 1–33, inclusive, of the owner's claims, and all claims of the contractor, having been ruled upon by the engineer/architect, were not subject to arbitration in its opinion, but that its claims Nos. 34–44, inclusive, should be referred to arbitrators.

The contractor declined to agree to any arbitration and its complaint dated June 6, 1958, to foreclose its mechanic's lien of May 12, 1958, was filed on June 7, 1958.

On the same day, June 7th, the owner filed a surety bond to discharge the mechanic's lien against its real estate.

The owner answered the complaint and set up as a first defense that by the terms of the contract all factual issues in dispute were to be decided by arbitration; for a second defense, it admitted the basic contract price of $645,620.00 and the additional sum of $5,766.77, denied the item for additional labor and materials in the sum of $20,447.12, admitted payments on the contract price of $582,267.45, and then denied that any amount was due by it to the contractor for reasons stated in the answer and counterclaim, alleged defective work and damages for delay in the total sum of $80,227.49, claiming $75,-847.18 for delay, and $4,380.31 for defective work. The prayer of the answer and counterclaim, among other demands, was for judgment against the contractor in the sum of $10,597.89, the difference between its claimed damages of $80,227.49 and $69,629.60 (the total of $69,117.32 balance under the contract plus $512.28 approved by the engineer/architect).

The contractor replied to this counterclaim denying any liability by reason of the facts alleged in it.

In January, 1959, the owner gave notice of motion for an order submitting to arbitration all issues of fact as to the claims of the parties, each against the other. This motion was heard by Judge Ashton H. Williams on March 13, 1959, and by his Order dated April 15, 1959, Judge Williams denied the motion on the ground that the demand for arbitration was not made within a reasonable time, as required by the contract.

The owner appealed from this Order denying arbitration and the United States Court of Appeals for the Fourth Circuit, basing its decision upon the insufficiency of the record before Judge Williams, dismissed the appeal, but remanded the case

to the District Court for further proceedings. Hering Realty Co. v. General Const. Co., Columbia, S. C., 272 F.2d 371.

On remand, the motion was again heard by Judge Williams on two separate occasions, and by his Order dated August 12, 1960, he referred the owner's claims Nos. 11, 12, 13, 26, 31 and 34 to 44, inclusive, to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

Apparently, the contractor thought that certain language in Judge Williams' Order might be construed as constituting a summary judgment as to its claims for extra labor and materials and an appeal was taken to the United States Court of Appeals for the Fourth Circuit, which construed the Order as not constituting a final adjudication of any of the claims. 286 F.2d 641.

The contractor opposed arbitration of any claims and the owner sought arbitration of those of its claims which had not been passed upon by the engineer/architect, consisting principally of its claims for delays allegedly due to the contractor, totalling in excess of $75,-000.00.

Following this decision of the Court of Appeals, arbitrators were appointed and an arbitration hearing was held in accordance with the rules of the American Arbitration Association. Fifteen days were spent in hearing evidence and receiving exhibits and the testimony is voluminous and the exhibits numerous.

On September 1, 1961, the three arbitrators issued their award, which (1) stated that Claimant's Claim 13 was withdrawn at the time of the hearing; (2) denied and disallowed Claims 11, 12, 26, 31, 34 to 37, inclusive, and Claims 39 to 43, inclusive; (3) allowed Claim No. 38 in the amount of $12,500.00; and (4) provided that the taxable costs, consisting of Reporter's fees, American Arbitration Association fees, and fees and expenses of the three Arbitrators, should be divided equally between the parties, and that this dismissed all other costs claimed in Claim No. 44.

This Award has been filed in this Court and, of the seven motions now before me, five relate to it.

In making these motions and opposing them, counsel for the parties have submitted briefs and reply briefs in support of their respective positions and, likewise, have fully stated such positions in oral argument before me.

Plaintiff has moved (1) for an order for summary judgment in its favor against the surety bond filed by defendant to discharge the mechanic's lien sought to be foreclosed in this action in the principal sum of $69,117.32, with interest at the legal rate from March 15, 1958; and (2) for an order modifying the Award of the Arbitrators by striking from it the allowance of $12,500.00 on the owner's claim No. 38, and instead allowing the owner nothing on that claim.

Defendant has moved (1) for an order entering summary judgment denying and dismissing plaintiff's claim for additional labor and materials in the amount of $20,447.12, less $512.28, a net of $19,-934.84, and that its bond filed to discharge the mechanic's lien be reduced accordingly; (2) for an order setting aside the Award of the Arbitrators on Claims Nos. 34–37, inclusive, and on Claims Nos. 39–42, inclusive; (3) for an order that the entire record in the arbitration proceeding, including the testimony, the evidence and the briefs of counsel for both parties be filed of record in this action; (4) for an order remanding the Award to the Arbitrators, with instructions to find the facts with respect to the specific claims; and (5) for an order increasing the Award of $12,500.00 on Claim No. 38, as found by the Arbitrators, to $37,500.00.

Plaintiff's motion number 2 and defendant's motions numbers 2 and 5, constitute appeals from the Award of the Arbitrators and defendant's motions numbers 3 and 4 relate to it.

■ A motion to set aside or modify an award is the only way to appeal from it to this Court. Gramling v. Food Machinery and Chemical Corp., D.C., 151 F.Supp. 853, 855.

Article 53 of the General Conditions of the contract provides that all disputes, claims or questions subject to arbitration under this Contract shall be submitted to arbitration in accordance with the provisions, then obtaining, in the Standard Form of Arbitration Procedure of the American Institute of Architects, and that Institute's Standard Form of Arbitration Procedure permits the party desiring arbitration to select either the Procedure of the Institute or the Commercial Arbitration Rules of the American Arbitration Association under which the arbitration proceeding is to be conducted. Defendant, in demanding arbitration, designated the Arbitration Rules of the American Arbitration Association, and Judge Williams' Order, pursuant to which this arbitration proceeding was held, so directed.

In accordance with those rules, defendant's claims ordered to arbitration were submitted to a Board of Arbitrators, which consisted of W. H. F. Miller, William W. Sturges and James A. Webster, Jr., the two named first being practicing attorneys in North Carolina, and the last named being a Professor of Law in the Law School of Wake Forest College. When these motions were argued orally before me, counsel for both parties agreed that these arbitrators were men of skill and experience, possessed of the highest integrity and character, and at no time has there been any allegation or imputation of fraud, corruption, misbehavior, partiality, excess of authority, or other failure to act as fair and impartial arbiters on their part.

This Board of Arbitrators has spent fifteen days taking testimony and receiving evidence, has had the benefit of seeing and hearing the witnesses presented by the opposing parties, has had briefs from counsel for both parties to consider, and has rendered its Award.

Plaintiff, by its second motion, seeks to have set aside the award of $12,500.00 to defendant on its Claim No. 38. Defendant, by its second and fifth motions, seeks to set aside the entire award, to have this Court substitute its decision on Claim No. 38 for that of the arbitrators, and, in addition, to have the award remanded to the arbitrators with directions to make specific findings on each item of defendant's claims, and to have the arbitration proceeding made a part of the record in this case.

▆▆ Gramling v. Food Machinery and Chemical Corp., supra, cites many authorities on the question as to when the courts will, and when they will not, upset an arbitration award, and from these it is well settled that there should be great hesitation in upsetting an arbitration award, and that awards should stand unless it is made abundantly clear that it was obtained through corruption, fraud or undue means, (Karppinen v. Karl Kiefer Machine Co., 2 Cir., 187 F.2d 32, 34); that the courts will not review the findings of law and fact contained in an award, and will never undertake to substitute their judgment for that of the arbitrators, since any other rule would make an award the commencement, not the end, of litigation, (3 Am.Jur., Arbitration and Award, § 172; Patriotic Order, Sons of American Hall Ass'n v. Hartford Fire Ins. Co., 305 Pa. 107, 157 A. 259, 78 A.L.R. 899); and that a party who has accepted an arbitration (here defendant persistently sought one) must be content with the results, (Firemen's Fund Ins. Co. v. Flint Hosiery Mills, (CA 4) 74 F.2d 533, 104 A.L.R. 556, cert. den. 295 U.S. 748, 55 S.Ct. 826, 79 L.Ed. 1692). It is also settled that the courts will not retry matters submitted to arbitration on their merits, (Greenville County v. Spartanburg County, 62 S.C. 105, 125, 40 S.E. 147, 154).

▆▆ By defendant's choice, this arbitration was held under the rules of the American Arbitration Association and Judge Williams' Order so provides. Under those rules, there is no requirement that the arbitrators make detailed findings of fact or of law, it being sufficient if they pass upon all claims and matters referred to them, as they have done here. Hale v. Friedman, 108 U.S.App.D.C. 272, 281 F.2d 635 (1960); Commercial Solvents Corp. v. Louisiana Liquid F. Co.,

D.C., 20 F.R.D. 359; Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168. Such is also the clear inference, if not the actual holding of Rounds v. Aiken Manufacturing Co., 58 S.C. 299, 36 S.E. 714.

I cannot substitute my judgment for that of the arbitrators nor does it appear to me that there was no factual evidence before them to support the award they have made.

Therefore, it is my opinion that plaintiff's motion number 2 and defendant's motions numbers 2, 3, 4 and 5 should be denied.

There remains plaintiff's motion number 1 and defendant's motion number 1 for my consideration.

■■ Plaintiff's motion is for summary judgment for $69,117.32, with interest at the legal rate, from March 15, 1958. Apparently the date March 15, 1958, is sought to be fixed by taking a period of thirty days from the date of the engineer/architect's certificate for payment and I shall refer to that more fully below.

The complaint alleges an original contract price of $645,620.00, and approved extra work during the time of construction of $5,766.77, a total of $651,386.77, and payments to it by defendant of $582,-269.45, leaving a balance due of $69,117.-32, for which amount plaintiff asks summary judgment. This complaint was filed June 7, 1958.

By its answer, defendant admits a basic contract price of $645,260.00 and the additional sum of $5,766.77 alleged in the complaint, and admits that total payments of $582,269.45 had been made, but denies any amount due by it to plaintiff by reason of its third defense, which is a counterclaim for damages in the total amount of $80,227.49. Among other prayers of the answer and counterclaim is that defendant have judgment against plaintiff for $10,597.89, the difference between the damages sought on its counterclaim and the balance due on the original contract and extra work approved by the engineer/architect; with an additional allowance of $512.28, which defendant admits to be due plaintiff, although the latter does not claim it is allowed.

Without considering the law of South Carolina which does not permit either party in an action to foreclose a mechanic's lien to obtain a judgment *in personam* against the other (Tenney v. Anderson Water Power Co., 67 S.C. 11, 45 S.E. 111), these allegations and this prayer of the answer are significant here, in that, if defendant claimed damages totalling $80,227.49 due it by plaintiff when this action was commenced, and did not owe plaintiff anything at that time, then the judgment sought should have been the total damages claimed, and not that amount less $69,629.60.

When this case was heard on appeal to the United States Court of Appeals for the Fourth Circuit, No. 8225, 286 F.2d 641, defendant's counsel in their Brief, Statement of Facts, page 3, state: " * * for the contract price of $645,620.00, plus approved change orders totaling $5,766.-77, or a total of $651,386.77. Hering paid $582,269.45, or there is a balance due under the original contract of $69,117.-32."

In argument in their Brief in that appeal defendant's counsel also stated: "II. General has no valid claims other than $69,117.32 balance due under the Contract, plus $512.28 'extras' allowed by Engineer-Architect", (p. 10); and, at Page 6 of that Brief, Statement of Facts, defendant's counsel stated: "The defendant in its Answer, First Defense, set up the arbitration provision of the contract before it answered to the merits; it then denied as a Second Defense all liability beyond $69,629.60 ($69,117.32 plus allowed extras of $512.28; and as a Third Defense the owner set up a counterclaim of $80,227.49."

Judge Williams' Order for arbitration uses practically the same language in stating the allegations of defendant's answer.

While, in argument before me in their briefs, defendant's counsel contend that it does not owe this contract balance even at

this time, stating that plaintiff has not as yet completed the work. This is contrary to the admissions in the answer and those quoted above. When defendant answered it knew whether there was any balance due on the contract price.

Defendant's counsel admitted in its answer, verified by defendant's manager, that there was a contract balance of $69,117.32 due when this action was commenced, but alleged that plaintiff owed it more than that amount. The arbitrators have determined that last allegation to be incorrect. These allegations of the answer were repeated in Judge Williams' Order in August, 1960, and were repeated again by defendant's counsel on the appeal from that Order.

Defendant has had possession of the building since February 12, 1958, and has had the use of it since that date. It has filed claims for all alleged defects and damages, some of which appear to have been passed upon by the engineer/architect to defendant's satisfaction, and the remainder more than $75,000.00, have been decided upon in the arbitration obtained by it over plaintiff's opposition.

In the face of admissions by defendant's manager and counsel in its answer and brief, defendant cannot now say that the work is still incomplete, insofar as the work plaintiff contracted to do is concerned.

The general rule and the rule in South Carolina, is that clients are bound by admissions of facts made by attorneys in the progress of a trial. 5 Am.Jur. Attorneys at Law, § 93; Smith et al. v. Pearson, et al., 210 S.C. 524, 45 S.E.2d 479; Hall v. Benefit Association, 164 S.C. 80, 161 S.E. 867; Southern Ry. Co. v. Swift & Co., 158 S.C. 307, 155 S.E. 429; Ex parte Jones, 47 S.C. 393, 25 S.E. 285.

It is my opinion that defendant owes plaintiff a contract balance of $69,117.32, which amount is liquidated and bears interest from its due date. Plaintiff claims this date to be March 15, 1958, but that is not shown beyond question, in my opinion. However, it is clear that this balance was due when the complaint was filed on June 7, 1958, and interest should be allowed from that date. Computing interest at the legal rate in South Carolina, of six per cent. until January 7, 1962, a period of three years and seven months, it amounts to $14,860.22. This interest when added to the contract balance of $69,117.32 makes a total of $83,977.54. Upon this should be credited $12,500.00 awarded defendant against plaintiff on the former's claim No. 38 by the arbitrators, leaving a balance of $71,477.54, in which amount in my opinion plaintiff is now entitled to judgment against the property or the bond given to discharge the lien on it.

The remaining motion before me is defendant's motion for summary judgment, denying plaintiff's claims for $19,934.84 for additional labor and materials. Plaintiff filed claims for extra work and materials totalling $20,447.12 and the engineer/architect passed its judgment upon these on March 11, 1958, but, for some reason not apparent, did not notify plaintiff of its decision until April 10, 1958. Plaintiff did not appeal to arbitration from the decision of the engineer/architect, which allowed plaintiff $512.28 of the amount claimed.

Throughout the record defendant admits liability for $512.28 allowed by the engineer/architect, although plaintiff has made no claim to this specific amount. Defendant's counsel stated in argument before me that this allowance of $512.28 was admittedly due plaintiff since the engineer/architect had allowed it and defendant had not appealed arbitration from this decision. Defendant then contends that plaintiff is bound by this decision since it did not appeal to arbitration.

Both parties agree that the building was delivered to defendant on February 12, 1958, and at that time the contractee, or owner, was Bennettsville Realty Company, a South Carolina corporation, with an authorized capitalization of $10,000.00. After the building was delivered to the owner and while the parties were in a controversy as to completion, payment, etc., Bennettsville Realty Company went out

of existence and was absorbed by the present defendant, a Pennsylvania corporation, whose authorized capital was 1050 shares without par value. At that time plaintiff had not been paid the contract balance, as it has not been until this date. Plaintiff's return to this motion states that it had received information that defendant was proposing to mortgage the premises for some $400,000.00, and there is no denial that such mortgage was executed. Plaintiff's return states that defendant had its performance bond, but the only security available to it for any contract balance and other amounts due it was the improved property itself.

To avail itself of that security plaintiff had to comply with the South Carolina Mechanic's Lien law, which requires the filing of such lien within 90 days after ceasing to perform labor or furnish materials (Sec. 45–259, Code of Laws of South Carolina, 1952) and that action to foreclose such lien be commenced within six months after ceasing such work and furnishing of materials (Sec. 45–262, Code of Laws of South Carolina, 1952).

Plaintiff received notice of the engineer/architect's allowance and disallowances of its claim for extra work and materials on April 10, 1958, and the record contains a stipulation of these parties that negotiations trying to resolve their differences continued until the first part of May, when apparently an impasse was reached. Plaintiff filed its Mechanic's Lien on May 12, 1958, and filed its complaint to foreclose this lien on June 7, 1958.

Every South Carolina contract must be considered as having in contemplation the laws of this State when it is entered into, and, in this case, a contract provision should not be construed in such manner as to deprive a contracting party of valuable rights given it by law. To have forced the plaintiff to elect to demand arbitration of rulings of the engineer/architect adverse to it, rather than file the lien and bring action to foreclose it, would have been to deprive it of valuable rights.

Judge Williams' Order directing arbitration recognizes this situation, finding that the contractor, by bringing suit for the foreclosure of its Mechanic's Lien, thereby legally waived all of its rights under the contract to arbitrate its claims. It also appears from Judge Williams' first Order, in which he denied arbitration, filed April 16, 1959, that his opinion was that arbitration as such was not a condition precedent to institution of an action on the contract, or matters growing out of the contract, for reasons therein stated, to which no exception appears to have been taken.

While there are many statements in briefs setting out what plaintiff has done and failed to do, which is non-compliance with the contract requirements, nowhere is there any record of any hearing on the merits as to the validity or invalidity of these claims. In my opinion plaintiff is entitled to present its evidence as to them. The Court of Appeals for the Fourth Circuit has decided that Judge Williams' Order directing arbitration of certain of defendant's claims against plaintiff did not constitute summary judgment as to plaintiff's claims (286 F.2d 641) and nothing before me now indicates that any evidence as to these claims has been properly presented since that time.

I conclude, therefore, that defendant's motion for summary judgment denying and dismissing plaintiff's claim for additional labor and materials should be denied.

The record shows that after issues between these parties were joined, defendant gave notice of demand for a jury trial, subject to its demand for arbitration. Arbitration has been held as to certain of defendant's claims against plaintiff and as to these they are concluded by the award of the arbitrators. This Order disposes of the claim of plaintiff for the contract balance and interest. Left to be decided are the claims of plaintiff for additional labor and materials and possibly other issues.

This Court will retain jurisdiction for the determination of these or any other

remaining issues. The parties hereto have leave to apply to me as they may be advised for any orders or make any motions concerning these remaining issues.

Based on the evidence before me, I find and conclude:

1. That no showing has been made by either party which warrants my setting aside, amending, modifying or altering the award of the arbitrators on the claims of defendant referred to them.

2. That the award of the arbitrators should not be remanded to them for specific findings as to each claim passed upon by them.

3. That no issue of fact exists as to the contract balance of $69,117.32 and that defendant owes plaintiff this amount, with interest from June 7, 1958, which calculated to January 7, 1962, amounts to $14,860.22, a total of $83,977.54. Upon this should be credited the arbitrators' award of $12,500.00 to defendant on its claim No. 38, leaving a balance of $71,477.54, in which amount plaintiff is now entitled to judgment.

4. That plaintiff is entitled to be heard as to the merits of its claim of $20,447.12 for extra labor and materials.

5. That all motions of both parties, with the exception of plaintiff's motion for summary judgment for the contract balance, with interest, should be denied, and that plaintiff's motion for summary judgment for the contract balance should be granted as modified herein.

IT IS, THEREFORE, ORDERED, That plaintiff be and it is hereby awarded judgment in the sum of SEVENTY ONE THOUSAND, FOUR HUNDRED, SEVENTY-SEVEN and 54/100 ($71,477.54) DOLLARS, which includes interest to January 7, 1962, against the bond of defendant which discharged the mechanic's lien of plaintiff; and that all other motions of plaintiff and defendant be and they hereby are denied; and that the parties hereto have leave to apply to me, as they may be advised, for any order with reference to the remaining issues to be determined.