

# KEN PAXTON
## ATTORNEY GENERAL OF TEXAS

March 30, 2023

The Honorable Harold V. Dutton, Jr.
Chair, House Committee on Juvenile Justice & Family Issues
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

**Opinion No. KP-0440**

Re: Questions related to public-private partnerships for state-funded prekindergarten offered by Texas school districts under Education Code section 29.153 (RQ-0480-KP)

Dear Representative Dutton:

You ask several questions regarding state-funded prekindergarten offered by Texas school districts under Education Code section 29.153.[1] You state that two subsections of that provision, subsections (d-1) and (g), "form the basis for this opinion request." Request Letter at 3. You tell us the Eighty-sixth Legislature added these subsections to section 29.153 through House Bill 3, which you explain "made comprehensive and significant changes in the Foundation School Program, specifically in the way public school districts and charter schools are financed and in which public education is provided." *Id.* at 2; *see also* Act of May 27, 2019, 86th Leg., R.S., ch. 943, § 2.019, 2019 Tex. Gen. Laws 2545, 2626 (codified at TEX. EDUC. CODE § 29.153) ("House Bill 3"). We begin with the relevant statutory changes House Bill 3 made to section 29.153.

**House Bill 3**

Education Code subsection 29.153(a-1) requires a school district to provide free prekindergarten if the district identifies a sufficient number of eligible children who are at least four years old and permits a school district to do the same if the district identifies a sufficient number of eligible children who are at least three years old. *See* TEX. EDUC. CODE § 29.153(a-1). Relevant here, House Bill 3 amended subsection 29.153(c) to require school districts to provide such prekindergarten for the four-year-old age group "on a full-day basis," whereas previously a district could provide it for either age group on a half-day basis. *See* House Bill 3 § 2.019. House Bill 3 also amended an existing process for school districts to seek an exemption from section

---

[1]*See* Letter and Attachments from Honorable Harold V. Dutton, Jr., Chair, House Comm. on Pub. Educ., to Honorable Ken Paxton, Tex. Att'y General at 1–2 (rec'd Oct. 7, 2022), https://texasattorneygeneral.gov/sites/default /files/request-files/request/2022/RQ0480KP.pdf ("Request Letter" and "Attachments," respectively).

29.153's requirements by making it subject to certain prerequisites concerning public-private partnerships.[2] *See id.* Additionally, the bill established a similar public-private partnership prerequisite for the construction, repurpose, or lease of a classroom facility, or issuance of related bonds, by a school district for the provision of any required prekindergarten classes. *See id.* The bill made these changes effective immediately. *See id.* § 6.001(f).

**Education Code Section 29.153**

Subsections 29.153(d), (d-1), and (d-2) set forth the current exemption process:

(d) Subject to Subsections (d-1) and (d-2), on application of a district, the commissioner shall exempt a district from the application of all or any part of this section, including all or any part of Subchapter E-1 for a prekindergarten class described by Subsection (c-1),[3] if the commissioner determines that:

(1) the district would be required to construct classroom facilities in order to provide prekindergarten classes; or

(2) implementing any part of this section would result in fewer eligible children being enrolled in a prekindergarten class under this section.

*(d-1) A district may not receive an exemption under Subsection (d) unless the district has solicited proposals for partnerships with public or private entities regarding prekindergarten classes required under this section in accordance with guidance provided by the agency regarding soliciting partnerships and considered submitted proposals at a public meeting. A decision of the board of trustees regarding a partnership described by this subsection is final.*

---

[2]The Texas Education Agency ("TEA") notified school administrators that because the requirement for providing prekindergarten for four-year-old's on a full-day basis would "create a large number of logistical challenges for some districts given the short amount of time with which to implement this requirement," the Legislature provided an exemption, but that "the process itself requires districts to attempt to engage in partnerships with community-based early learning centers." Letter from Jacquie Porter, TEA State Director of Early Childhood Education, to school administrators (July 18, 2019), *available at* https://tea.texas.gov/sites/default/files/TAA%20-%20HB%203_ECE%207.18.19.pdf.

[3]Subsection 29.153(c-1) requires prekindergarten classes for the four-year-old age group to "comply with the program standards required for high quality prekindergarten programs under Subchapter E-1." TEX. EDUC. CODE § 29.153(c-1). Subchapter E-1 of Education Code chapter 29, titled "High Quality Prekindergarten Program Requirements," sets forth curriculum and teacher requirements for required prekindergarten classes, with additional provisions for family engagement, measuring student progress, evaluating effectiveness of program funding, and contracting with eligible private providers to provide services or equipment for the program. *See generally id.* §§ 29.164–.172.

> (d-2) An exemption under Subsection (d) may not be granted for a period longer than three school years and may be renewed only once.

TEX. EDUC. CODE § 29.153(d), (d-1), (d-2) (footnote and emphasis added). Subsection 29.153(g), relating to classroom facilities, provides as follows:

> *(g) Before a school district or open-enrollment charter school may construct, repurpose, or lease a classroom facility, or issue bonds for the construction or repurposing of a classroom facility, to provide the prekindergarten classes required under this section, the district or school must solicit and consider proposals for partnerships to provide those classes with community-based child-care providers who:*
>
> > *(1) are a Texas Rising Star Program provider with a three-star certification or higher;*
> >
> > *(2) are nationally accredited;*
> >
> > *(3) are a Head Start program provider;*
> >
> > *(4) are a Texas School Ready! participant; or*
> >
> > *(5) meet the requirements under Section 29.1532.[4]*

*Id.* § 29.153(g) (footnote and emphasis added). Your questions center on the provisions italicized above, asking first whether subsections 29.153(d-1) and (g) "are mandatory or discretionary[.]" Request Letter at 1.

### Nature of Education Code Subsections 29.153(d-1) and (g) as Mandatory or Discretionary

Subsection 29.153(d-1) prohibits a school district from "receiv[ing] an exemption under Subsection (d) unless" certain conditions are met. TEX. EDUC. CODE § 29.153(d-1); *see also Riordan v. State*, No. 03-16-00297-CR, 2017 WL 3378889, at *13 (Tex. App.—Austin Aug. 4, 2017, no pet.) (observing that the word "unless" is generally used in the context of a precondition). Subsection 29.153(d) allows, but does not require, a school district to seek an exemption "from the application of all or any part of" the requirements of section 29.153. TEX. EDUC. CODE § 29.153(d); *see also id.* § 29.153(a-1) (requiring a school district to provide free full-day prekindergarten to eligible children who are at least four years old), .153(c-1) (requiring the prekindergarten classes to meet certain standards), .153(e) (requiring a school district to develop a system to notify the district's population with eligible children about the availability of a

---

[4]Section 29.1532 refers to certain prekindergarten program requirements including skill development, child-care licensing standards of the Department of Family and Protective Services, class size requirements, and reporting requirements. *See* TEX. EDUC. CODE § 29.1532.

prekindergarten class). To the extent a school district seeks such an exemption, the district may not receive it "unless the district has solicited proposals for partnerships with public or private entities regarding prekindergarten classes required under this section in accordance with guidance provided by the agency regarding soliciting partnerships and considered submitted proposals at a public meeting." *Id.* § 29.153(d-1). By its terms, the exemption process in subsection 29.153(d-1) applies only with respect to "prekindergarten classes *required under this section*," which are those for eligible children who are at least four years old. *Id.* (emphasis added); *see also id.* § 29.153(a-1). Thus, to receive an exemption, a school district must have solicited proposals for public-private partnerships regarding prekindergarten classes for four-year-old children and done so "in accordance with guidance provided by the agency . . . ." *Id.* § 29.153(d-1); *see also id.* § 5.001(1) (defining "agency" for purposes of Title 2 of the Education Code, which includes chapter 29, as the TEA). Further, a school district seeking an exemption must consider the "submitted proposals at a public meeting." *Id.* § 29.153(d-1). In summary, while nothing in section 29.153 requires a school district to seek an exemption from its application to the extent a school district does so the preconditions of subsection 29.153(d-1) are mandatory in order to receive the exemption.

Next, subsection 29.153(g) sets forth a condition precedent for a school district to "construct, repurpose, or lease a classroom facility, or issue bonds for the construction or repurposing of a classroom facility, to provide the prekindergarten classes required under this section[.]" *Id.* § 29.153(g); *see also* TEX. GOV'T CODE § 311.016(3) (providing that the term "'must' creates or recognizes a condition precedent" under the Code Construction Act). Like subsection 29.153(d-1), subsection 29.153(g) by its terms applies only with respect to providing "the prekindergarten classes *required under this section*," which are those for eligible children who are at least four years old. TEX. EDUC. CODE § 29.153(g) (emphasis added); *see also id.* § 29.153(a-1). To the extent a school district has available classroom facilities to provide prekindergarten classes to the four-year-old age group such that it has no need to construct, repurpose, or lease a classroom facility, subsection 29.153(g) would be inapplicable. But to the extent a school district must construct, repurpose, or lease a classroom facility or issue bonds for such construction or repurposing in order to provide prekindergarten classes to that age group, it is mandatory for a school district beforehand to "solicit and consider proposals for partnerships to provide those classes" with certain community-based providers. *Id.* § 29.153(g). The statute identifies these child-care providers by reciting five categories, any one of which the solicited child-care provider must meet. *See id.* In summary, subsection 29.153(g) is mandatory for any school district that needs to construct, repurpose, or lease a classroom facility or issue bonds for such construction or repurposing in order to provide prekindergarten classes to eligible children who are at least four years old.[5]

---

[5]We note that while subsections 29.153(d-1) and (g) are mandatory only to the extent a school district seeks to exercise the specific actions for which these subsections establish prerequisites, another provision in chapter 29 sets forth a separate requirement for establishing any prekindergarten program. Section 29.1533 provides that "[b]efore establishing a new prekindergarten program, a school district shall consider the possibility of sharing use of an existing Head Start or other child-care program site as a prekindergarten site." TEX. EDUC. CODE § 29.1533. Thus, irrespective of section 29.153, a school district establishing a new prekindergarten program shall first "consider the possibility" of sharing an existing site in accordance with section 29.1533. *See id.* Unlike in subsections 29.153(d-1) and (g), the Legislature does not specify in section 29.1533 the manner for a school district to "consider the possibility" of site sharing. *See id.*

**Substantive Requirements of Education Code Subsection 29.153(g)**

Your next question concerns the substantive requirements of subsection 29.153(g). *See* Request Letter at 1, 9–14. As previously addressed, subsection 29.153(g) identifies five possible categories of community-based child-care providers from whom a school district subject to its provisions must solicit partnership proposals and whose proposals the school district must consider. *See* TEX. EDUC. CODE § 29.153(g). You assert that "[s]ome school districts have effectively modified the requirements of subsection (g) by adding criteria" to the childcare provider categories. Request Letter at 9–10. You state that "[t]hese school districts then decline to solicit proposals, claiming that there are no child-care providers that meet" the additional criteria. *Id.* at 10. You identify the additional criteria as stemming from section 29.171. *See id.* That section authorizes a school district offering a prekindergarten program under Education Code subchapter E-1 to "enter into a contract with an eligible private provider to provide services or equipment for the program" and sets forth the requirements for a private provider to be eligible to enter into the contract.[6] TEX. EDUC. CODE § 29.171(a), (b). It is your position that "[t]he criteria for eligibility to submit a proposal" under subsection 29.153(g) is "different and distinct from the more stringent criteria for eligibility to actually enter into a public-private contract" pursuant to subsection 29.171(b). Request Letter at 12. Accordingly, you assert that the contract eligibility provisions of subsection 29.171(b) should not be applied "as a condition of submitting a proposal" under subsection 29.153(g). *Id.* at 13.

To address your question, we turn to the Education Code provisions governing the procurement of goods and services by school districts. Subsection 44.031(a) provides that "all school district contracts for the purchase of goods and services" above a certain amount shall be made by the method "that provides the best value for the district" from a list of possible methods, which includes "a request for proposals, for services other than construction services[.]" TEX. EDUC. CODE § 44.031(a)(3). Subsection 44.031(b) lists the factors a school district must consider "in determining to whom to award a contract," which includes factors "specifically listed in the

---

[6]"To be eligible to contract with a school district to provide a program or part of a program, a private provider must be licensed by and in good standing with the Department of Family and Protective Services" and also:

> (1) be accredited by a research-based, nationally recognized, and universally accessible accreditation system approved by the commissioner;
>
> (2) be a Texas Rising Star Program provider with a three-star certification or higher;
>
> (3) be a Texas School Ready! participant;
>
> (4) have an existing partnership with a school district to provide a prekindergarten program not provided under this subchapter; or
>
> (5) be accredited by an organization that is recognized by the Texas Private School Accreditation Commission.

TEX. EDUC. CODE § 29.171(b).

request for bids or proposals."[7] *Id.* § 44.031(b)(9). The statute thus recognizes that the exercise of a procurement method, such as a request for proposals, and the ultimate award of a contract are two separate stages in a larger process. Here, subsection 29.153(g) pertains to the procurement stage and requires only that a community-based child-care provider fall within one of the five categories listed therein. *See id.* § 29.153(g); *see also In re Stalder*, 540 S.W.3d 215, 220 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("In a disjunctive list of requirements, signified by the use of the conjunction 'or,' at least one of the options is required but any one or more of the options satisfies the requirement."). Subsection 29.171(b), on the other hand, pertains to the contractual award stage, for which additional eligibility requirements must be met by private providers. *See* TEX. EDUC. CODE § 29.171(b) (stating the requirements for a private provider "[t]o be eligible to contract with a school district" to provide a prekindergarten program). Construing subsections 29.153(g) and 29.171(b) in this manner comports with the legislative presumption that "[i]n enacting a statute . . . the entire statute is intended to be effective[.]" TEX. GOV'T CODE § 311.021(2); *see also Werline v. E. Tex. Salt Water Disposal Co., Inc.*, 209 S.W.3d 888, 896 (Tex. App.—Texarkana 2006), *aff'd*, 307 S.W.3d 267 (Tex. 2010) ("When two provisions govern the same subject matter, an effort should be made to harmonize and give effect to both provisions.").

---

[7]Subsection 44.031(b) provides in full:

> Except as provided by this subchapter, in determining to whom to award a contract, the district shall consider:
>
> > (1) the purchase price;
> >
> > (2) the reputation of the vendor and of the vendor's goods or services;
> >
> > (3) the quality of the vendor's goods or services;
> >
> > (4) the extent to which the goods or services meet the district's needs;
> >
> > (5) the vendor's past relationship with the district;
> >
> > (6) the impact on the ability of the district to comply with laws and rules relating to historically underutilized businesses;
> >
> > (7) the total long-term cost to the district to acquire the vendor's goods or services;
> >
> > (8) for a contract for goods and services, other than goods and services related to telecommunications and information services, building construction and maintenance, or instructional materials, whether the vendor or the vendor's ultimate parent company or majority owner:
> >
> > > (A) has its principal place of business in this state; or
> > >
> > > (B) employs at least 500 persons in this state; and
> >
> > (9) any other relevant factor specifically listed in the request for bids or proposals.

TEX. EDUC. CODE § 44.031(b).

In summary, the only criteria subsection 29.153(g) requires community-based child-care providers to meet in order for the school district to solicit and consider prekindergarten partnership proposals from them is that they fall into one of the five categories listed therein. That no provider meeting the subsection 29.153(g) criteria may ultimately be eligible for award of a contract does not serve as a bar to initiate the solicitation process.

### Texas Education Agency Guidance on Exemption Renewals and General Compliance with Education Code Subsection 29.153(d-1)

In your third question, you ask whether TEA "rules and guidelines are consistent with subsections [29.153](d-1) and (g)[.]"[8] Request Letter at 1, 14. Your focus appears to be on particular guidance documents issued by the TEA.[9] The fundamental issues in these documents for which you seek clarification are: (1) the extent to which local education agencies ("LEAs") that have already received an exemption must comply with subsection 29.153(d-1) if they seek exemption renewal; and (2) whether an LEA's level of underlying interest in participating in public-private partnerships has any bearing whether it must comply with subsection 29.153(d-1).

With regard to the first issue, subsection 29.153(d-1) directs a school district seeking an exemption from the application of section 29.153 to first solicit partnership proposals with public-private entities regarding required prekindergarten classes and consider the submitted proposals at a public meeting. TEX. EDUC. CODE § 29.153(d-1). Any initial exemption application must follow this process. In accordance with subsection 29.153(d-2), a granted exemption "may be renewed" one time. *Id.* § 29.153(d-2). But unlike the process for receiving an initial exemption in subsection 29.153(d-1), subsection 29.153(d-2) includes no specific requirements or prerequisites for an exemption renewal, nor does it define "renewal." *See id.* We must assume that the Legislature's failure to include any such requirements or prerequisites is intentional. *See Interest of J.J.R.S.*, 627 S.W.3d 211, 219 (Tex. 2021) ("We analyze statutes as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded." (quotation mark omitted)).

Since renewal is statutorily undefined, we consider its common meaning. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) (stating that to determine a term's common, ordinary meaning, courts "typically look first to dictionary definitions"). To "renew" means to "extend for a further period the validity of" something such as a license, a subscription, or a contract. NEW OXFORD AMERICAN DICTIONARY 1478 (3d ed. 2010); *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY 1922 (2002) (defining to "renew" as "to grant or obtain an extension of; continue in force for a fresh period"). Presumably, a school district with an existing exemption could not have received that exemption without having first solicited proposals for public-private partnerships in accordance with subsection 29.153(d-1). Given the common meaning of "renew" and the absence of any statutory renewal prerequisites, a court could conclude

---

[8]While you ask about a particular rule, you acknowledge that it "does not appear to be inconsistent with subsections (d-1) and (g) of section 29.153." Request Letter at 15 (referring to Title 19, section 102.1002, of the Texas Administrative Code).

[9]You refer us to two guidance documents: *Public-Private Prekindergarten Partnership Proposal Solicitation Guidance* and *Early Learning Partnership Provider Eligibility Guidance*. *See id.* at 15–17; Attachment at 2–3.

that a renewal of an existing exemption obtained pursuant to subsection 29.153(d-1) does not necessarily require a new round of partnership proposal solicitations.

Regarding the second issue, as previously stated, subsections 29.153(d-1) and (g) set forth conditions precedent for two scenarios: either for a school district to "receive an exemption under Subsection (d)" or for a school district to "construct, repurpose, or lease" a classroom facility (or issue bonds) to provide required prekindergarten classes, respectively. TEX. EDUC. CODE § 29.153(d-1), (g). Thus, they apply to school districts wishing to achieve either scenario regardless of any underlying level of interest in participating in public-private partnerships.

### Giving Effect to Education Code Subsections 29.153(d-1) and (g)

Before considering your final question, we address your request that we "issue an opinion that TEA must implement and give effect to subsections (d-1) and (g) of section 29.153." Request Letter at 19. You explain your view that "[a]lthough the TEA does not have a mandatory duty to issue new rules, parts of its guidelines amount to *de facto* rules and are inconsistent with" subsections 29.153(d-1) and (g) and that "[i]f TEA decides to interpret the statute in a way that has state-wide general effect, it must do so through APA notice and comment rule making."[10] *Id.* at 19–20. "Had these guidelines been proposed as rules," you tell us, "stakeholders could have commented in a manner that might have resulted in modifications that would avoid any misunderstandings about the requirements of subsections (d-1) and (g)." *Id.* at 19.

When a state agency "promulgates a rule without complying with the proper rule-making procedures, the rule is invalid." *El Paso Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008). A "rule" under the APA "means a state agency statement of general applicability that: (i) implements, interprets, or prescribes law or policy; or (ii) describes the procedure or practice requirements of a state agency" but "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." TEX. GOV'T CODE § 2001.003(6)(A), (C). "Under the APA's definition, an agency statement does not have to be formally designated a 'rule' in order to meet the statutory definition and thus trigger the necessity for adoption by notice-and-comment rulemaking procedures." *Tex. Comm'n on Env't Quality v. Friends of Dry Comal Creek*, No. 03-21-00204-CV, 2022 WL 4540955, at *7 (Tex. App.—Austin Sept. 29, 2022, no pet.).

But the Texas Supreme Court recognizes that "[n]ot every statement by an administrative agency is a rule for which the APA prescribes procedures for adoption and for judicial review." *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 443 (Tex. 1994). An administrative agency may issue guidance that contains statements that "appear to implement, interpret, or prescribe agency policy and practice but are not rules that must be formally promulgated." *Tex. Comm'n on Env't Quality*, No. 03-21-00204-CV, 2022 WL 4540955, at *7. The APA "defines 'rule' in a way that will exclude a considerable range of unofficial, individually directed, tentative or other non-proscriptive agency or staff issuances concerning law or policy." *Teladoc, Inc. v. Tex. Med. Bd.*, 453 S.W.3d 606, 621–22 (Tex. App.—Austin 2014, pet. denied). In determining whether an

---

[10]The term "APA" refers to the Administrative Procedure Act. *See generally* TEX. GOV'T CODE §§ 2001.001–.903.

agency statement constitutes a rule subject to the APA, a court will "consider the intent of the agency, the prescriptive nature of the guidelines, and the context in which the agency statement was made." *Tex. Comm'n on Env't Quality*, No. 03-21-00204-CV, 2022 WL 4540955, at *7 (quoting *Combs v. Ent. Publ'ns, Inc.*, 292 S.W.3d 712, 722 (Tex. App.—Austin 2009, no pet.).

You do not specifically ask us to determine whether the material in the Attachments constitute rules. Request Letter at 19–20. But to the extent any TEA guidelines have general applicability and implement, interpret, or prescribe law or policy, or describe the procedure or practice requirements of the agency, a court would have a basis under the APA for concluding that they should be promulgated through formal rulemaking.

### Effect of Gubernatorial Executive Orders Relating to the COVID-19 Pandemic

Your final question is "[w]hether Executive Orders on the COVID pandemic authorize the TEA or school districts to suspend" subsections 29.153(d-1) and (g). Request Letter at 2, 20–21. The Governor declared a state of disaster in Texas due to COVID-19 on March 13, 2020, and that declaration is ongoing.[11] Subsection 418.016(a) of the Government Code, part of the Texas Disaster Act of 1975, authorizes the Governor to "suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster." TEX. GOV'T CODE § 418.016(a). Pursuant to this authority, the most recent disaster declaration renewal suspends "any state statute or administrative rule regarding contracting or procurement" to the extent the enforcement thereof "would impede any state agency's emergency response that is necessary to cope with this declared disaster[.]" Disaster Declaration at 2 (noting that the suspension is "for the duration of this declared disaster for that limited purpose"). You do not tell us about, nor are we aware, of any connection between the enforcement of subsections 29.153(d-1) and (g) and the TEA's emergency response to the COVID-19 pandemic. Without more, a court would likely conclude that the current COVID-19 disaster proclamation does not authorize the suspension of subsections 29.153(d-1) and (g).

The Disaster Act also authorizes the Governor, upon declaring a disaster, to "issue executive orders, proclamations, and regulations and amend or rescind them," which "have the force and effect of law." TEX. GOV'T CODE § 418.012. You bring to our attention Executive Order GA-38, which states that "[t]o ensure the ability of Texans to preserve livelihoods while protecting lives," certain requirements apply, including that "[p]ublic schools may operate as provided by, and under the minimum standard health protocols found in, guidance issued by the Texas Education Agency."[12] Exec. Order GA-38 at 4. As this executive order does not expressly suspend

---

[11]*See* GOVERNOR OF THE STATE OF TEXAS, DISASTER PROCLAMATION (Mar. 13, 2020), https://gov.texas.gov/uploads/files/press/DISASTER_covid19_disaster_proclamation_IMAGE_03-13-2020.pdf. The Governor renewed the disaster declaration most recently on March 16, 2023. *See* GOVERNOR OF THE STATE OF TEXAS, DISASTER PROCLAMATION (Mar. 16, 2023), https://gov.texas.gov/uploads/files/press/DISASTER_renewing_COVID19_disaster_proclamation_IMAGE_03-16-2023.pdf ("Disaster Renewal").

[12]GOVERNOR OF THE STATE OF TEXAS, EXECUTIVE ORDER 38 (July 29, 2021), https://gov.texas.gov/uploads/files/press/EO-GA-38_continued_response_to_the_COVID-19_disaster_IMAGE_07-29-2021.pdf ("Exec. Order GA-38"). Pursuant to the Governor's most recent disaster declaration, Executive Order GA-38 remains in effect. *See* Disaster Renewal at 2.

any laws within the Education Code, a court would likely conclude that it does not authorize the suspension of subsections 29.153(d-1) and (g). You do not tell us about, nor are we aware of any other executive orders that purport to suspend these subsections.

**S U M M A R Y**

Section 29.153 of the Education Code provides for free prekindergarten for certain eligible children. To the extent a school district seeks an exemption from the application of its provisions pursuant to subsection 29.153(d), the provisions of subsection 29.153(d-1) concerning the solicitation of public-private partnerships are mandatory to receive the exemption. Subsection 29.153(g), which likewise concerns the solicitation of public-private partnerships, is mandatory for any school district that needs to construct, repurpose, or lease a classroom facility or issue bonds for such construction or repurposing in order to provide prekindergarten classes to eligible children who are at least four years old.

The contract eligibility provisions of subsection 29.171(b) should not be applied as a condition of submitting a proposal under subsection 29.153(g).

A renewal of an existing exemption obtained pursuant to subsection 29.153(d-1) does not necessarily require a new round of partnership proposal solicitations.

Compliance with subsections 29.153(d-1) and (g) for school districts seeking an exemption pursuant to subsection 29.153(d) is mandatory regardless of the underlying level of interest in participating in public-private partnerships.

To the extent any Texas Education Agency guidelines have general applicability and implement, interpret, or prescribe law or policy, or describe the procedure or practice requirements of the agency, a court would have a basis under the Administrative Procedure Act for concluding that they should be promulgated through formal rulemaking.

A court would likely conclude that neither the Governor's COVID-19 Disaster Declaration nor any related Executive Order authorize the suspension of subsections 29.153(d-1) or (g).

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT E. WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee